NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JANE E. BENTLEY, | |
| Plaintiff, | Civil No. 05-2942 (RMB) |
| v. | |
| ATLANTIC COUNTY, NEW JERSEY, et al., | **MEMORANDUM AND ORDER** |
| Defendants. | |

On June 2, 2008, this Court conducted a conference to address various issues raised by the parties in the Joint Final Pretrial Order (the "PTO"). At the conference, the Court expressed its concern that Plaintiff's legal claims set forth in the PTO went beyond the Court's prior rulings. The Court therefore ordered the parties to submit trial briefs in preparation for the September 15, 2008 trial.

Upon review of the parties' trial submissions [Dkt. Entries Nos. 82 and 85], it is evident to the Court that the Plaintiff is seeking to pursue a new claim that was never addressed by the various pre-trial submissions in this case. Suffice it to say that Plaintiff's case has evolved and transformed since the filing of the complaint more than three years ago. At the time of the filing of the PTO, however, only one claim remained -

1

Plaintiff's procedural due process claim. Yet, the PTO, as well as Plaintiff's Trial Brief, pursue still another claim. Although this Court could exercise its discretion and preclude Plaintiff from presenting a new claim at this late juncture, it will not do so. The Court will, however, reject the new claim on its merits, for the reasons discussed below.

As set forth in the Court's Order, dated January 4, 2008, the Court permitted Plaintiff to proceed on her procedural due process claim, as alleged in Count I of the Complaint. That claim is solely a claim that her constitutional due process rights were violated because she was not provided a prompt post-deprivation hearing concerning her November 5, 2003 suspension.

The parties have spent considerable time and effort in their Trial Briefs arguing whether or not Plaintiff's suspension was disciplinary and which section of the New Jersey Civil Service System governed her appeal process. Specifically, Plaintiff claims that under § 4A:2-2.5 of the New Jersey Administrative Code ("§ 2-2.5"), Defendants were required to give Plaintiff, within five days following the suspension, a Preliminary Notice of Disciplinary Action ("PNDA") with opportunity for a hearing. By failing to follow § 2-2.5, Plaintiff argues, Defendants violated Plaintiff's due process rights.[1] Defendants claim that

---

[1] It is undisputed that Defendants did not comply with § 2-2.5.

2

§ 2-2.5 did not apply because the suspension was deemed "not disciplinary", but even if it did, their non-compliance with § 2-2.5 was irrelevant because Plaintiff always had the general right to appeal the appropriateness of her suspension to the Merit System Board pursuant to § 4A:2-1.1 ("§ 2-1.1").

However, these issues are nothing more than tempting red herrings because there is no claim in this case that Defendants violated Plaintiff's state law rights under the New Jersey Civil Service Act.  The real question underlying Plaintiff's due process claim is <u>not</u> whether the suspension was disciplinary or which section of the New Jersey Civil Service System governed her appeal process or even whether Defendants complied with the New Jersey Civil Service System, but <u>whether Defendants afforded Plaintiff the minimum amount of due process required by the Constitution</u>.[2]

Plaintiff appears to argue that a violation of § 2-2.5 is <u>per se</u> a constitutional violation.  This Court disagrees.  While § 2-2.5 may provide a review process that satisfies the requirements of constitutional due process, it does not define the minimum process due to Plaintiff under the Constitution nor does it offer the only means of providing due process.  <u>See</u>,

---

[2] Plaintiff also argues that her right to constitutional due process is not dependant on how her suspension was characterized.  However, Defendants do not argue that Plaintiff was not entitled to due process; rather, they argue that Plaintiff received due process.  Thus, the Court need not address this argument.

e.g., Vitek v. Jones, 445 U.S. 480, 491 (1980) (state policy does not "answer[] the question of what process is due under the Constitution"). Indeed, "[t]here is no rote formula for sufficient protections under the Due Process Clause. Rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007) (quoting Matthews v. Eldridge, 424 U.S. 319, 334 (1976)).

The record shows that Plaintiff was suspended on November 5, 2003. Although she was not issued a formal PNDA in connection with her suspension, Plaintiff did eventually avail herself of the opportunity for review of the Sheriff's decision to suspend her by filing an appeal with the Merit Board on November 12, 2004. (Pl. Trial Br. at 10). Defendants filed a response on November 29, 2004. (Id.). Plaintiff then filed a reply on January 10, 2005, in which she "argued that the record neither supported a finding that Bentley was unfit for duty nor supported Dr. Gallegos' recommendation for six (6) months of psychotherapy." (Id.). On July 28, 2005, the Merit Board issued its decision, ruling that Plaintiff's suspension was reasonable and that Plaintiff must comply with Dr. Gallegos' recommendation before she could be reinstated.

Plaintiff now appears to argue a new claim, that the Merit Board's review of her suspension was inadequate under the due

process requirements because "there was no hearing in which Bentley could contest the facts relied upon by the Sheriff..." (Pl. Trial Br. at 11). First, as the Court has already noted, this is a new claim raised by the Plaintiff. On that basis alone, the Court could deny it. Nowhere in her previous papers (except the PTO) did Plaintiff discuss the adequacy of the Merit Board's review. Nonetheless, the Court will address the claim and reject it because it has no merit.

The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews, 424 U.S. at 333. However,

> [a]n individual's due process right to an opportunity to be heard does not ensure a hearing in all contexts. To so require would grind judicial and administrative gears to a screeching halt. Thus, an individual's due process right to an opportunity to be heard can be preserved by courts or administrative bodies in many different ways. The constitutional requirements of due process are not technical, nor is any particular form of procedure always necessary to provide due process.

Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996) (citing Mitchel v. W.T. Grant Co., 416 U.S. 600, 609 (1974)). How "intensive" the process must be is,

> a determination that depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest.

Wilson, 475 F.3d at 178 (citing Matthews, 424 U.S. at 334-35).

In Wilson, court security officers who had been termed "medically disqualified" challenged their employers' decision to terminate them, arguing, in part, that they were denied due process.  The Third Circuit affirmed the district court's conclusion that the plaintiffs were provided with sufficient process because they "were provided with notice of their medical disqualification and offered an opportunity to respond with medical documentation from their own doctors regarding their ability to perform their positions."  Id. at 179.  The court further explained,

> [w]hile this is not a traditional hearing, the process afforded the appellants is sufficient given the balance of their interest in maintaining employment and the government's interest in security.  A more rigorous process would not significantly enhance the accuracy of the medical qualification process.

Id. (citing Matthews, 424 U.S. at 335).

In this case, Plaintiff had the opportunity to present her case to the Merit Board for review.  Although a formal hearing was not held, she submitted a brief that argued the merits of her case.  Indeed, a review of the Merit Board's decision shows that the Board heard and considered Plaintiff's side of the story, including the report of Plaintiff's own psychiatrist, Dr. Hewitt, who found Plaintiff to be fit for duty.  (See Administrative Appeal, dated July 28, 2005 (attached as Ex. I to Def. Motion for Summary Judgment [Dkt. No. 58]) at 5-6).  Just as the plaintiffs in Wilson had the opportunity to submit medical documentation

from their own doctors regarding their ability to perform their positions, Plaintiff in this case also had the opportunity to submit her own psychiatrist's report regarding her fitness for duty.  Moreover, after Defendants submitted their opposition brief, Plaintiff submitted a reply brief.  Thus, she had the opportunity not only to set forth her own arguments, but also to contest Defendants' arguments.

Based on the undisputed record regarding the Merit Board's review, this Court finds that the review Plaintiff received was adequate given the balance of Plaintiff's interest in not being suspended or undergoing unnecessary intensive psychological treatment and the government's interest in maintaining security.  As was the case in Wilson, a more formal hearing process would not significantly enhance the accuracy of the decision to suspend temporarily employees who are believed to be psychologically unfit for duty.[3]  See, e.g., Matthews, 424 U.S. at 343-44 (noting that inquiries involving medical assessments are "sharply focused and easily documented" and, thus, the need for evidentiary hearing is diminished).  Thus, balancing the interests at stake, this Court finds that Plaintiff was afforded the opportunity to be heard "in a meaningful manner."

---

[3] The Court notes that unlike the situation in Wilson, where plaintiffs suffered a permanent deprivation (i.e., job termination), Plaintiff here suffered a temporary deprivation (i.e., suspension until deemed psychologically fit).  This distinction weighs in favor of affording Plaintiff even less formal process than was afforded the plaintiffs in Wilson.

7

However, even though Plaintiff was heard "in a meaningful manner," it appears that she was not afforded such opportunity "at a meaningful time." The record shows that over one and one-half years passed between the time of Plaintiff's suspension on November 5, 2003, and the decision of the Merit Board on July 28, 2005. Defendants' failure to provide Plaintiff with any direction as to the appropriate appeal process caused or at least contributed to this delay.[4] Thus, Defendants did not provide Plaintiff a prompt review of her case, which does amount to a constitutional due process violation.

Perhaps following Plaintiff's lead, Defendants also raised a new argument for the first time at the June 2, 2008 status conference. Essentially, Defendants claim that, despite their failure to inform Plaintiff of the proper appeal process, they are not liable for the delay of Plaintiff's review by the Merit Board because Plaintiff's attorney was aware of the proper appeal process. Because the knowledge of Plaintiff's attorney is imputed to Plaintiff, Defendants argue, Plaintiff was already aware that she could (or should) appeal her case directly to the Merit Board. Thus, Defendants conclude, "due process would not require notifying the plaintiff of that which, actually or constructively, she already knew." (Def. Trial Br. at 15).

However, this argument does not carry the day. The

---

[4] This issue of delay is what the Court has consistently viewed as the only legal issue remaining in the case.

8

attorney's legal knowledge of the proper appeal process does not address Plaintiff's (and, thus, her attorney's) lack of factual knowledge that ultimately caused the delay – i.e., Plaintiff did not know that the Sheriff had characterized her suspension as "not disciplinary." As the Court explained in its opinion dated April 16, 2008, without this factual information, neither Plaintiff nor her attorney, armed with legal knowledge, could have known that § 2-1.1 applied as opposed to § 2-2.5. In short, the attorney's understanding of the law did not eliminate the factual confusion. Thus, the Court rejects Defendants' new argument that the attorney's legal knowledge defeats Plaintiff's due process claim.[5]

At this point, the Court has rejected all of Defendants' legal arguments regarding liability for the delay and the parties have agreed that there are no factual issues surrounding the delay. Thus, it appears liability is no longer an issue. Since the Court has determined that Plaintiff received the process due to her under the Constitution via the Merit Board's review, but that such process was unduly delayed by Defendants, Plaintiff may pursue her claim for damages that she alleges resulted from that delay. Accordingly, the Court finds that <u>the only issue remaining for trial is the amount of damages Plaintiff is entitled to because of the delay</u>.

---

[5] Of course, this evidence might be relevant to Plaintiff's claim for emotional distress. <u>See</u> <u>infra</u>.

As to damages, Plaintiff asserts that, under Carey v. Piphus, 435 U.S. 247, 260 (1978), she is entitled to compensatory damages unless Defendants prove that Plaintiff would have been suspended and found psychologically unfit even if a "proper hearing" had been held. (Pl. Trial Br. at 13). She further contends that "had she been afforded a hearing as required by the Fourteenth Amendment and the New Jersey Civil Service Act, she would have established that she suffered from no psychological illness or condition that made her unfit for duty and that Dr. Gallegos' recommendation that she be kept out of work for six months was unsupported by the results of his evaluation." (Pl. Trial Br. at 21). Thus, Plaintiff argues, she is entitled to backpay and pension benefits from December 2, 2003 through her mandatory retirement on February 29, 2008. (Id.).

In response, Defendants argue that because the constitutional violation is Defendants' failure to advise Plaintiff of her right to appeal the suspension to the Merit System Board, "the damages depend on what would have occurred if the plaintiff had been advised of that right and had taken an earlier appeal to the Board." (Def. Trial Br. at 11). Defendants claim that "[t]he obvious answer is that the same result would have occurred, only earlier, and [thus,] the plaintiff will be entitled to recover only nominal damages." (Id. (citing Carey, 435 U.S. at 259-267)).

The Court finds that Defendants have met their burden. As

discussed above, the Court has determined that Plaintiff did have an adequate review by the Merit Board; the only reason the review fell short of the constitutional due process requirements was because it was unduly delayed. It is highly unlikely – indeed, wishful thinking – that the timing of the review would affect the substance or outcome of the review. That is, the Court finds that if Plaintiff had appealed to the Merit Board a year earlier, the result would be exactly the same; it simply would have occurred earlier. Accordingly, Defendants are correct and Plaintiff is not entitled to compensatory damages, but to nominal damages. See Carey, 435 U.S. at 266 ("the denial of procedural due process should be actionable for nominal damages without proof of actual injury").

Additionally, to the extent Plaintiff can prove that she suffered emotional distress from the procedural due process violation, Plaintiff is entitled to damages as determined by a jury. Id. at 264 ("mental and emotional distress caused by the denial of procedural due process itself is compensable"). However, as recognized in Carey, "where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." Id. at 263. Thus, Plaintiff must "convince the trier of fact that [s]he actually suffered distress because of the denial of procedural due process itself" - in this case, that is the delay. Id. at 263 (emphasis

added).

In summary, the only issue remaining for trial is the amount of damages to which Plaintiff is entitled as a result of the delay in obtaining a review by the Merit Board.  Because the Court has found that the ultimate decision of the Merit Board would not have been any different had the review been conducted earlier, Plaintiff is only entitled to nominal damages for the violation itself.  However, Plaintiff may recover for any emotional distress that she suffered as a result of the delay. <u>This issue of emotional distress is the only factual issue that must be resolved by a jury – i.e., whether Plaintiff suffered emotional distress because of the delay and, if so, the amount of damages she deserves</u>.

In light of the foregoing, the parties are instructed to prepare a new joint final pretrial order.  A proposed joint final pretrial order shall be submitted to the Court on or before September 5, 2008.  Plaintiff shall submit the first draft to opposing counsel no later than August 25, 2008.  The Court will conduct a final pre-trial conference on September 12, 2008 at 10:00 a.m. and trial will commence as previously scheduled.

Dated:  August 18, 2008          s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE