<u>**NOT FOR PUBLICATION**</u>                              [Docket Nos. 112, 114]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| JANE E. BENTLEY,<br><br>            Plaintiff,<br><br>    v.<br><br>ATLANTIC COUNTY, NEW JERSEY,<br>et al.,<br><br>            Defendants. | Civil No. 05-2942 (RMB)<br><br>**OPINION** |

Appearances:

David S. Dessen, Esquire
Dessen Moses & Rossitto
1415 Route 70 East, Suite 614
Cherry Hill Plaza
Cherry Hill, New Jersey 08034
856-795-1115
    Attorney for Plaintiff

Timothy M. Crammer, Esquire
Crammer, Bishop, Marczyk & O'Brien, PC
508 New Jersey Avenue, Suite B3
Absecon, New Jersey  08201
(609) 677-6996
    Attorney for Defendants

**BUMB**, United States District Judge:

   This matter comes before the Court upon Defendant Atlantic County Sheriff James McGettigan's motion for judgment pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59.

1

Plaintiff Jane E. Bentley also moves for the award of attorney's fees.

For the reasons set forth below, the Court will deny Defendant McGettigan's motion for judgment as a matter of law but grant Defendant's motion for a new trial. In light of the Court's decision, Plaintiff's motion for an award of attorney's fees will be denied as moot.

**I. Background**

**A. Facts**

The facts of the case, as presented to the jury, were essentially undisputed. On November 5, 2003, Plaintiff Jane Bentley, an Atlantic County Sheriff's Officer, was suspended by Under-Sheriff Joseph Connelly ("Connelly"), who suspected that Ms. Bentley was psychologically unfit for duty. Connelly reported his conclusions to the Atlantic County Sheriff, James McGettigan ("McGettigan"). On November 6, 2003, McGettigan advised Bentley that she was suspended and ordered her to be examined by a psychologist, Dr. Guillermo Gallegos. Accordingly, on November 12, 2003, Bentley underwent a psychological evaluation by Dr. Gallegos.

On November 19, 2003, Dr. Gallegos issued his report. He concluded that Bentley was psychologically unfit for duty as a Sheriff's Officer and he recommended that she undergo weekly

psychotherapy sessions for six months before being considered for reinstatement to duty.  On December 1, 2003, McGettigan advised Bentley of Dr. Gallegos' findings and informed her that she would be classified as unfit for duty as of December 2, 2003.

Prior to the issuance of Dr. Gallegos' report, however, Bentley sought to challenge the initial suspension.  On November 13, 2003, under the terms of her representative union's collective bargaining agreement, Bentley filed a grievance and sought to arbitrate the merits of the suspension through the Public Employment Relations Commission ("PERC").  A labor attorney represented her throughout the grievance proceeding.

In the grievance proceeding, McGettigan argued that the suspension could not be arbitrated because it was not disciplinary in nature.  Bentley, however, argued that the suspension was, in fact, disciplinary, and that PERC should order arbitration of the merits of the suspension.  On October 28, 2004, PERC ruled that Plaintiff's grievance could not be resolved in arbitration because, to the extent the suspension was deemed disciplinary, it constituted "major discipline[,]" and major disciplinary disputes are not arbitrable.[1]  PERC noted that Bentley's claims should be addressed to the Merit System Board (the "Board"), the New Jersey agency authorized to resolve

---

[1] The PERC decision addressed only the arbitrability of Plaintiff's grievance; it offered no ruling as whether the suspension was disciplinary or not.

3

employment disputes in civil service jurisdictions like Atlantic County.

Accordingly, on November 12, 2004, Bentley appealed her suspension to the Board.  Although Bentley's appeal to the Board was untimely, the Board agreed to hear the appeal because of the confusion regarding the nature of the employment action.  On June 9, 2005, while the Board's decision was still pending, Bentley filed this lawsuit.[2]  On July 28, 2005, the Board ruled that the Sheriff was justified in suspending Bentley.

### B.   Procedural History

Plaintiff's federal Complaint against McGettigan, Connelly, and the County of Atlantic (the "Defendants") asserted claims for (I) violation of her procedural due process rights; (II) intentional race discrimination under 42 U.S.C. 1981; (III) violation of her right to equal protection, (IV) violation of the New Jersey Law Against Discrimination ("NJLAD"), and (V) violation of the New Jersey Civil Rights Act.

On August 16, 2007, the Court entered summary judgment dismissing Bentley's procedural due process, equal protection, and NJLAD claims.[3]  Bentley thereafter filed a motion for

---

[2] The jury was only informed that the lawsuit was filed pending the Board's decision.

[3] The remaining claims of race discrimination and violation of the New Jersey Civil Rights Act (counts II and V) were not

4

reconsideration.  With respect to her procedural due process claim, Plaintiff clarified her position, arguing that she was not afforded a prompt post-deprivation hearing concerning her initial suspension.  On January 8, 2008, the Court reconsidered and vacated summary judgment as to the procedural due process claim only.  The Court denied the reconsideration motion with respect to the equal protection and NJLAD claims.

On February 2, 2008, with Court approval, the Defendants filed a renewed motion for summary judgment as to the clarified procedural due process claim.  The Defendants argued that Bentley was not entitled to a departmental hearing under New Jersey law because the suspension was not disciplinary.  They also argued that a constitutionally adequate process was in place for Bentley to challenge her non-disciplinary suspension: a direct appeal to the New Jersey Merit System Board.  The Defendants also moved for summary judgment on the remaining unresolved claims of race discrimination and a violation of the New Jersey Civil Rights Act.

On March 6, 2008, the Court granted summary judgment as to the race discrimination and civil rights claims but denied summary judgment as to the procedural due process claim.  The Court ruled that the notice component of procedural due process required that Defendants inform Bentley whether her suspension

---

addressed in Defendants' initial motion for summary judgment.

5

was disciplinary or not so that she could determine the appropriate avenue of review.  As the Court explained, "[i]f Defendants failed to apprise Plaintiff of the procedural options to challenge the suspension, such failure may have led to Plaintiff's confusion and ultimately delayed her post-deprivation hearing, which could be deemed a violation of due process.  Thus, the issue of whether Defendants provided Plaintiff with sufficient notice of the appeal procedure is a factual one that precludes summary judgment at this time." [Dkt. No. 65, at 8].

On March 13, 2008, the Defendants filed a motion for reconsideration of the Court's ruling, relying on <u>City of West Covina v. Perkins</u>, 525 U.S. 234,(1999), a case the Defendants claimed that the Court had overlooked.  The Defendants argued that the notice component of due process was satisfied because New Jersey's regulations providing for an appeal to the Merit System Board were published and publicly available to Bentley and her attorney.  Specifically, Defendants argued, the New Jersey Administrative Code presents two separate appeal procedures, § 2-2.5 for disciplinary actions and § 2-1.1 for general appeals.  On April 16, 2008, the Court denied the motion for reconsideration, explaining that <u>the issue was not the failure to set forth the details of the appeal process itself, but the failure to inform the Plaintiff whether her suspension was disciplinary or not</u>.  As the Court held, "the Sheriff was obligated, at the very least, to

inform Plaintiff of that characterization so that she could determine the appropriate appeal process under the Administrative Code.  <u>There is no evidence that Plaintiff was given any information as to whether her suspension was disciplinary or not. Without this information, Plaintiff could not have known that she should look to § 2-1.1 for the proper appeal procedure as opposed to § 2-2.5 [of the Administrative Code]</u>."  [Dkt. No. 72, at 6 (emphasis added)].  Indeed, as the Court had noted in its earlier Opinion of March 6, 2008, even the Merit System Board recognized the "confusion regarding the nature of the employment action," <u>i.e.</u>, disciplinary or non-disciplinary, and relaxed the rule deadlines to hear Plaintiff's untimely appeal.  [Dkt. No. 65, at 7].

The Court scheduled a conference for May 30, 2008, to address various issues raised by the parties in the Joint Final Pretrial Order.  At the conference, Defendant conceded that it failed to advise Bentley whether her suspension was disciplinary or not.  Thus, liability was not to be an issue at trial, only damages.  The Court also expressed its concern that Plaintiff's legal claims as set forth in the Pretrial Order appeared to go beyond the Court's prior rulings.  The Court requested that the parties submit trial briefs to resolve these issues prior to the September 15, 2008 trial.

In her trial brief, the Plaintiff raised the issue, for the

7

first time, of the adequacy of the hearing before the Board. Plaintiff argued that the review fell short of the constitutional due process requirements because there was no hearing in which she could contest the facts. The Court disagreed and held that the review Plaintiff received before the Board was constitutionally adequate. (Memorandum and Order [Dkt. No. 87]). The Court reiterated that the <u>only</u> reason the review was constitutionally deficient was because it was unduly delayed. The Court further explained that such delay, however, would <u>not</u> affect the substance or outcome of the review. That is, the Court found that even if Plaintiff had appealed to the Board a year earlier, the result would have been exactly the same; it simply would have occurred earlier. Accordingly, the Court found that Plaintiff was not entitled to compensatory damages, but solely to nominal damages. <u>See</u> <u>Carey</u>, 435 U.S. at 266 ("the denial of procedural due process should be actionable for nominal damages without proof of actual injury").

The Court also ruled that "to the extent Plaintiff [could] prove that she suffered emotional distress from the procedural due process violation, Plaintiff [was] entitled to damages as determined by a jury." [Dkt. No. 87, at 11]. However, because whatever distress the Plaintiff experienced may have been attributable to the suspension rather than to the deficiencies in procedure, the Court was clear that the Plaintiff bore the burden

8

of proving that she actually suffered distress because of the denial of procedural due process itself, i.e., the delay. [Id.].

The Court summarized its Opinion as follows:

"In summary, the only issue remaining for trial is the amount of damages to which Plaintiff is entitled as a result of the delay in obtaining a review by the Merit Board. Because the Court has found that the ultimate decision of the Merit Board would not have been any different had the review been conducted earlier, Plaintiff is only entitled to nominal damages for the violation itself. However, Plaintiff may recover for any emotional distress that she suffered as a result of the delay. This issue of emotional distress is the only factual issue that must be resolved by a jury – i.e., whether Plaintiff suffered emotional distress because of the delay and, if so, the amount of damages she deserves."

[Id. at 12].

On September 5, 2008, Defendants filed a supplemental trial brief on damages, arguing that New Jersey law allowed recovery only for severe emotional distress. To determine the proof required to recover damages for emotional distress, the Court followed the mandate in Bolden v. SEPTA, 21 F.3d 29 (3d Cir. 1994), and looked to analogous state tort law to determine the elements of a claim for emotional distress damages. Under New Jersey law, where the plaintiff has not been physically injured, s/he may recover for negligently inflicted emotional distress only if the resulting emotional distress is severe. See Decker v. Princeton Packet, Inc., 116 N.J. 418, 429-430 (1989). Thus, at the September 12, 2008 pre-trial conference, the Court ruled that Bentley would be required to show severe emotional distress

9

in order to recover damages for emotional distress.[4]

Trial commenced on November 12, 2008. On November 13, 2008, upon no objection by the Plaintiff, the Court granted Defendant County of Atlantic's Rule 50 motion to dismiss all claims against the County of Atlantic. The Court reserved decision on Defendant McGettigan's Rule 50 motions to dismiss the punitive damages claim against him and to dismiss the case in its entirety due to Bentley's failure to prove severe emotional distress.

On November 14, 2008, the jury returned a verdict. The jury found that the Plaintiff had suffered severe emotional distress as a result of the procedural due process violation and awarded Plaintiff $92,000 in damages. The returned verdict sheet (in relevant part) read as follows:

> 1. Do you unanimously find that Plaintiff Jane E. Bentley proved by a preponderance of the evidence that she experienced severe emotional distress caused by the fact that she was not advised that she could appeal her suspension to the Merit System Board:
>
>     __X__       _____
>     YES         NO
>
>     If your answer is "No", skip to Question 3. If your answer is "Yes", proceed to Question 2.

---

[4] As the New Jersey Supreme Court noted in Decker, the severity requirement reflects ongoing concern over the genuineness of emotional distress without consequent physical injury and serves as a guarantee that the claim is not spurious. Decker, 116 N.J. at 429-430. The evidence must demonstrate that the distress actually experienced is so severe that "no reasonable [person] could be expected to endure it." Buckley v. Trenton Saving Fund Soc'y., 111 N.J. 355, 366-367 (1988).

10

    2.    What amount of money would reasonably and adequately compensate the Plaintiff for such emotional distress? (After answering Question 2, skip to Question 4.)

    $ <u>92,000</u>

Based on the jury's verdict, the Court entered judgment on November 17, 2008 in favor of Bentley and against Defendant McGettigan in the amount of $92,000.

Defendant McGettigan now moves for judgment as a matter of law pursuant to Rule 50(b), or, alternatively, for a new trial pursuant to Rule 59. Defendant McGettigan argues that the evidence presented at trial did not support the jury's finding (as to Question 1) that the Plaintiff suffered severe emotional distress as a result of the procedural due process violation.

**II.  Standard of Review**

    **A.  Judgment as a Matter of Law (Rule 50)**

A party's motion for judgment as a matter of law may be granted where the "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party..." Fed. R. Civ. P. 50(a). If the court does not grant the party's motion made under Rule 50(a), the party may file a renewed motion for judgment as a matter of law under Rule 50(b) no later than ten days after the entry of judgment. Fed. R. Civ. P. 50(b). The same standard applies for motions made

under both 50(a) and 50(b).

Judgment as a matter of law under Rule 50 "should only be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" Raiczyk v. Ocean County Veterinary Hospital, 37 F.3d 266, (3d Cir. 2004) (quoting Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir. 1985)). "'The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003) (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).

### B. New Trial (Rule 59)

Where the Court denies a motion for judgment as a matter of law under Rule 50, it may still grant an alternative motion for a new trial under Rule 59. Roebuck v. Drexel University, 852 F.2d 715, 735 (3d Cir. 1988). Rule 59 states that a court may "grant a new trial on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court..." Fed. R. Civ. P. 59(a). Although the language of Rule 59 does not cite specific grounds for a new trial, there are many reasons why a new trial may be warranted. The most commonly raised reasons are: that there was prejudicial

error of law, that the verdict is against the weight of the evidence, that the verdict is too large or too small, that there is newly discovered evidence, that conduct of counsel or of the court has tainted the verdict, or that there has been misconduct affecting the jury. 11 C. Wright, A. Miller & R. Kane, Federal Practice and Procedure § 2805, at 55 (2005); see also Lightning Lube, Inc. v. Witco Corp., 802 F. Supp. 1180, 1186 (D.N.J. 1992).

"The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). However, the Third Circuit has established different levels of discretion depending on the proffered grounds for new trial. Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Specifically, "the district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings, or prejudicial statements made by counsel." Id. (internal citations omitted). However, the court's discretion to order a new trial is much narrower where the underlying reason is that the verdict is against the weight of the evidence. Id. at 1290. Indeed, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict

13

resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." <u>Williamson v. Consolidated Rail Corp.</u>, 926 F.2d 1344, 1353 (3d cir. 1991) (citing <u>EEOC v. Delaware Dep't of Health & Social Servs.</u>, 865 F.2d 1408, 1413 (3d Cir. 1989)).

In this case, Defendant McGettigan claims that a new trial is warranted for three reasons:  (1) the verdict is against the weight of the evidence; (2) there was improper conduct by Plaintiff's counsel which prejudiced the jury; and (3) the Court's instructions gave the jury a misleading impression of the law and the issues to be resolved.  Plaintiff counters that (1) the weight of the evidence supported the jury's verdict; (2) Plaintiff's conduct was not improper, but to the extent the Court finds it was improper, such conduct did not prejudice the jury; and (3) the Court's instructions to the jury were correct.

**III. Analysis**

The Court will discuss Defendant's motion for a new trial first.

    **A.  Motion for a New Trial**

Defendant McGettigan argues that the Court should grant a new trial for several reasons.  First, Defendant contends that the weight of the evidence failed to show that Plaintiff "experienced severe emotional distress attributable to her

14

realization in November of 2004 that she could have appealed in November of 2003." (Def. Motion at 27).  Second, Defendant claims that Plaintiff's counsel "acted improperly by constantly eliciting testimony from all of his witnesses that Bentley's emotional distress was related to the 'delay' in obtaining a decision from the Merit System Board... ."  (Id. at 28).[5]  Finally, Defendant argues that the Court's initial and supplemental instructions gave the jury a misleading impression of the law and the issues to be resolved.

Defendant's first two arguments are premised on a misunderstanding of the parameters of Plaintiff's claim and her compensable damages.  As set forth by the Court's rulings, Defendant's failure to advise Plaintiff of the nature of her suspension[6] (conceded by Defendant) caused a procedural due process violation in two ways – 1) it violated the notice component of due process, and 2) it violated the promptness component of due process because it resulted in an undue delay in Plaintiff's post-deprivation review.  It is the second part of this procedural due process violation - the delay - that

---

[5] Defendant further contends that Plaintiff's counsel repeatedly attempted to "circumvent the court's pre-trial rulings by suggesting to the jury that it could award damages for emotional distress caused by the plaintiff's financial difficulties."  (Id. at 28).

[6] For the sake of simplicity, the parties chose to present this issue to the jury as a failure to advise Plaintiff that she could appeal to the Merit System Board.

Defendant appears to have overlooked. The Court's ruling of August 18, 2008 made clear that, "Plaintiff may recover for any emotional distress that she suffered <u>as a result of the delay</u>." [Dkt. No. 87, at 12 (emphasis added)]. Given this ruling, the Court rejects Defendant's argument that, in order to recover any damages, Plaintiff had to prove that she experienced severe emotional distress "attributable to her realization in November of 2004 that she could have appealed in November of 2003." She could recover damages for severe emotional distress stemming from the delay in her post-deprivation review. It follows that Plaintiff's counsel was entitled to ask questions concerning the distress Plaintiff suffered due to the delay.

However, Plaintiff's counsel was not entitled to suggest to the jury that Plaintiff could recover for any distress caused by the suspension itself or the derivative financial hardship. The law is clear that Plaintiff cannot recover for emotional distress due to the justified deprivation itself, i.e., the suspension. <u>Carey v. Piphus</u>, 435 U.S. 247, 263 (1978) ("the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983"). Rather, Plaintiff must "convince the trier of fact that [s]he actually suffered distress because of the denial of procedural due process itself." <u>Id.</u> at 263. As Plaintiff is not entitled to recover for emotional distress resulting from the suspension itself, she is similarly precluded

16

from recovering for emotional distress resulting from financial difficulties due to the suspension. Consequently, to the extent Plaintiff's counsel suggested to the jury that it could award damages for emotional distress caused by the plaintiff's financial difficulties, such conduct was improper.[7]

Despite all the Court's prior attempts to clarify the precise issues for trial, upon review of the trial transcript, it appears that the entire trial was fraught with confusion. Without a clear understanding of the parameters of Plaintiff's claim, neither party was able to accurately present the case to the jury. Plaintiff's counsel saw the claim too broadly and consistently asked overly broad questions, thereby eliciting improper answers. Defendants' counsel saw the claim too narrowly and repeatedly objected to questions by Plaintiff's counsel related to the delay, which the Court erroneously sustained. Even the ultimate question posed to the jury (both orally and in written form on the verdict sheet) was unclear. The jury was asked whether it found that Plaintiff had "experienced severe

---

[7] The Court has already rejected Plaintiff's argument that the delay in going before the Board caused her to be unable to work during that time, which led to financial hardship that caused her severe emotional distress. This rejection was based on the Court's finding that even if Plaintiff had appealed to the Board earlier, the Board's decision would have been substantively the same, it just would have occurred earlier. In other words, Plaintiff still would have been suspended and still would have experienced all the financial problems and emotional distress that flowed from the suspension.

17

emotional distress caused by the fact that she was not advised that she could appeal her suspension to the Merit System Board." The phrasing of this question set forth Defendant's action (or lack of action) that caused the procedural due process violation, but failed to elucidate the violation itself – i.e., the deficiency in notice and the delay.  While Defendant's misunderstanding of the claim was undoubtedly part of the problem in drafting this elusive question, Plaintiff's counsel did nothing to alleviate the confusion.  Thus, the manner in which both parties elected to present the ultimate issue to the jury was erroneous.[8]

    Furthermore, the Court finds that the erroneous presentation of the legal issues affected the jury's understanding of the case as well as the ultimate verdict.  Indeed, as mentioned above, the confusion affected the Court in dealing with objections throughout the trial.  The prejudicial impact of the jury's confusion is perhaps best demonstrated by the jury's question during deliberations as to the economic value of Plaintiff's salary and benefits.  Defendant argues that the jury erroneously thought it could award economic damages.  Plaintiff argues that the jury was simply "looking for some fixed point to anchor its

---

[8] Added to this is the Court's concern that the parties chose to frame the issue for the jury as if the Court had found a constitutional violation.  However, as mentioned above, it was Defendants who conceded the violation.

18

deliberations on the otherwise wholly amorphous concept of damages for emotional distress." (Pl. Opp. at 12). The Court is unwilling to speculate why the jury asked such question. Whatever the underlying reasoning, the fact that the jury asked this question confirms the Court's concern that the confusion pervaded the entire trial.

Based on the above, the Court finds that the confusion among the parties as to the legal issues prevented the jury from having a clear understanding of the exact parameters of Plaintiff's claim and the damages that could flow therefrom. Accordingly, a new trial is warranted.

### B. Motion for Judgment as a Matter of Law

In considering Defendant's motion for judgment as a matter of law, the critical issue is whether a reasonable jury had a "legally sufficient evidentiary basis" to find that Plaintiff suffered severe emotional distress because of the procedural due process violation. However, because the Court has found that the trial was fraught with confusion based on legal error, the Court cannot grant judgment as a matter of law.

### C. Motion for Attorney's Fees

In light of the Court's ruling that a new trial is warranted, Plaintiff's motion for attorney fees must be denied as

19

moot.

### III. Conclusion

For the above reasons, this Court finds that a new trial is warranted. Accordingly, Defendant's motion for judgment as a matter of law or, alternatively, a new trial is granted in part and denied in part. Plaintiff's motion for attorney's fees is denied. An appropriate order shall issue this date.

Dated:  March 3, 2009          s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               United States District Judge